IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VERNON BAKER, #A1058244, | ) | CIV. NO. 16-00140 JMS/RLP |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | IN PART |
| vs. | ) | |
| | ) | |
| JANE DOE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **ORDER DISMISSING COMPLAINT IN PART**

Before the court is pro se Plaintiff Vernon Baker's prisoner civil rights

Complaint.  Compl., Doc. No. 1.  Plaintiff is a pretrial detainee incarcerated at the

Oahu Community Correctional Center ("OCCC").[1]  He is proceeding in forma

pauperis.  Plaintiff alleges OCCC staff violated the Eighth and Fourteenth

Amendments by denying him timely and adequate medical care following an

assault by another inmate at OCCC in March 2014.[2]  *Id.*, PageID #18-19.

---

[1] *See* Hawai'i State Judiciary's Public Access to Court Information, ("Ho`ohiki") at: http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm, *State v. Baker*, 1PC13-1-001121.

[2] Plaintiff names OCCC registered nurses Jane Doe, Janet Doe, Susan Doe, Betty Doe, Alice Doe, and Kathy Doe (collectively, "RN Defendants"); OCCC physicians Karl Ayer, M.D., and Barney Toyoma, M.D.; OCCC dentist Francis Hamada, DDS; and OCCC Food and Diet Supervisor John Doe (collectively, "Defendants").  Defendant Dr. Karl Ayer is named in his individual and official capacities, all other Defendants are named in their individual capacities, only.

Plaintiff's Complaint is DISMISSED in part pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The court finds that Plaintiff states a claim against unidentified RN Defendants, Dr. Karl Ayer, and Dr. Francis Hamada, and they will be required to respond to the Complaint after service is perfected.  Plaintiff fails to state a claim against Defendants Dr. Barney Toyoma and OCCC Food and Diet Supervisor John Doe, however, and those claims are DISMISSED with leave to amend.

Plaintiff may file an amended complaint curing the deficiencies in claims dismissed by this order on or before May 13, 2016.  In the alternative, he may notify the court in writing on or before May 13, 2016, that he will stand on his claims against RN Defendants, Dr. Karl Ayer, and Dr. Francis Hamada.  In that event, the court will order the U.S. Marshal to serve the Complaint as directed by Plaintiff, and the RN Defendants, Dr. Karl Ayer, and Dr. Francis Hamada will be directed to answer.

## I.  __BACKGROUND__[3]

Plaintiff alleges that at approximately 9:00 p.m., on March 20, 2014, he was attacked by another OCCC inmate.  Plaintiff was taken to OCCC medical module

---

[3] These facts are taken from the Complaint and accepted as true, but should not be construed as findings by the court.

2

5, where he reported severe pain in his mouth and throat and requested to be taken to the hospital.  RN Defendant Jane Doe photographed Plaintiff's face and mouth, gave him an ice pack, told him to take his already-prescribed naproxen for pain. She told him there was nothing wrong and denied his request to go to the hospital.

At 11:40 p.m., Plaintiff returned to OCCC medical module 5 because he was in severe pain and begged RN Defendant Janet Doe to be taken to the hospital.  Janet Doe and another nurse allegedly laughed at Plaintiff and told the guard that he had already been examined.

Two hours later, at 1:30 a.m., March 21, 2014, a guard called OCCC medical module 5 to report Plaintiff's continuing severe pain, inability to sleep, and request to go to the hospital.  RN Defendant Susan Doe explained that Plaintiff should report to sick call in the morning and denied Plaintiff's request to go to the hospital.  Plaintiff was unable to sleep because of the pain.

At 7:00 a.m. that morning, Plaintiff returned to sick call.  He reported that he was in great pain and unable to chew or eat, and begged for an appointment with a doctor.  He was told that a doctor's appointment would be scheduled as soon as possible.

On March 22, 2014, Plaintiff returned to sick call at 7:00 a.m.  He told "Nurse Neil" that he believed his jaw was broken.  Compl., Doc. No. 1, PageID

#12.  Nurse Neil told Plaintiff that he would be scheduled for an appointment with a physician.  Plaintiff's extreme pain continued.

Between March 21 and 28, 2014, Plaintiff says he "told each nurse that he needed to see the doctor and complained about the pain." *Id.*  He was told that he was scheduled for an appointment with a doctor.  Plaintiff was provided nothing for his pain, although his neck was obviously bruised, and he had a golf ball sized lump on his lower jaw.  Plaintiff says he lost fifteen pounds during this week.

On March 28, 2014, Defendant Dr. Karl Ayer examined Plaintiff.  Although Dr. Karl Ayer initially opined that he did not believe Plaintiff's jaw was broken, he sent Plaintiff to OCCC dentist, Dr. Francis Hamada, for an x-ray.  This x-ray revealed that Plaintiff's jaw was, in fact, broken.  Plaintiff says he begged Dr. Francis Hamada for pain medication, and Dr. Francis Hamada told him that he would discuss this request with Dr. Karl Ayer, but neither Dr. Francis Hamada nor Dr. Karl Ayer returned to speak with Plaintiff.  Someone prescribed Plaintiff antibiotics and a "soft diet," however, and told Plaintiff he would be referred to The Queen's Medical Center ("QMC").  Plaintiff was also told that his jaw could not be wired in place and hospitalization was not required because his "bones [were] already fusing out of place." *Id.*, PageID #13.

Plaintiff began receiving a meal tray that was labeled "soft diet," but he says it was identical to the regular diet tray he was served before his injury, and it was not kosher.  Plaintiff asked someone to contact Defendant OCCC Food and Diet Supervisor John Doe about this issue, and complained to unidentified nurses and to RN Defendant Susan Doe, but his diet was not adjusted.  Plaintiff says he lost twenty-five pounds until his jaw sufficiently healed to eat a regular diet again.

Between April 8 and 14, 2014, Plaintiff kept seeking pain relief, but was told he must wait until his appointment at QMC.  Finally, on April 14, 2014, Plaintiff was taken to QMC, where a doctor told him the bone had set and his jaw could no longer be wired into place.  This doctor prescribed Plaintiff a "liquid/ensure/yogurt diet."  *Id.*, PageID #14.  Plaintiff says he never received Ensure or a liquid diet, and his soft diet "was barely edible and never soft," despite his numerous written and oral requests to unidentified OCCC medical staff.  *Id.* Plaintiff continued to lose weight and suffered headaches and insomnia.

Between April 18 and July 2014, Plaintiff filed numerous requests to see a physician due to his continuing pain and the unresolved lump in his neck. Plaintiff says Defendant Betty Doe refused to schedule him for an appointment and Defendant Kathy Doe, who is in charge of scheduling appointments, knew of his many requests for medical care but failed to intervene.

5

In July 2014, Defendant Dr. Barney Toyoma examined Plaintiff, prescribed him a muscle relaxant, flexeril, and ordered an ultrasound of his neck. An ultrasound was performed on September 12, 2014, and revealed that Plaintiff had a one centimeter lymph node in his neck. Dr. Barney Toyoma allegedly told Plaintiff nothing could be done about his enlarged lymph node, but Plaintiff also complains that he was not informed about this "abnormality" until he reviewed his own medical records. *Id.*, PageID #16. Plaintiff requested a specialist or physical therapy, but Dr. Barney Toyoma told him neither was available at OCCC.

Plaintiff's flexeril prescription ran out after twelve days, although his pain continued. In November 2014, Plaintiff was prescribed Elavil,[4] but the pain persisted. On January 6, 2015, Dr. Barney Toyoma examined Plaintiff again and this time prescribed physical therapy. Plaintiff had twice-weekly physical therapy sessions between January 12 and 31, 2015, and was told to follow up with Dr. Barney Toyoma when these sessions finished.

---

[4] Plaintiff is not explicit, but he suggests Dr. Barney Toyoma prescribed him Elavil, which is used to treat depression, relieve anxiety and tension, and prevent migraine headaches. *See Web*MD, http://www.webmd.com/drugs/2/drug-1807/elavil-oral/details (last visited 03/31/2016).

Plaintiff requested a follow up appointment with Dr. Barney Toyoma on March 22, 2015, and saw him on March 27, 2015.  Dr. Barney Toyoma denied Plaintiff further treatment for "TMJ" or the lump in his neck.[5]

Plaintiff complains that, had his broken jaw been treated and set when it was injured, it would have healed properly and he would not have a one centimeter lymph node or "golf ball sized lump in the neck."  *Id.,* PageId #17.  Plaintiff seeks compensatory damages and treatment for his "ongoing pain & injury sustained due to the negligent indifference."  *Id.*, PageID #18.

## II.  <u>SCREENING</u>

The court must screen all civil actions brought by prisoners proceeding in forma pauperis or seeking redress from a government entity, officer, or employee. 28 U.S.C. §§ 1915(e)(2) & 1915A(a).  Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from a defendant who is immune from relief must be dismissed.  28 U.S.C. §§ 1915(e)(2) & 1915A(b); 42 U.S.C. § 1997e(c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police*

---

[5] It is unclear whether the lump in Plaintiff's neck and his allegedly enlarged lymph node refer to the same condition.

*Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court must identify and disregard allegations that "are not entitled to the assumption of truth," that is, allegations that are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679-80. Then, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, the claim may proceed. *Id.* at 680.

8

The court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). "[C]onclusory allegations of law and unwarranted inferences are insufficient." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

Leave to amend should be granted if the plaintiff can correct the defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). If the complaint cannot be saved by amendment, however, dismissal without leave to amend is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## III. <u>DISCUSSION</u>

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005).

Section 1983 requires a connection between a defendant's actions and a plaintiff's allegations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978);

*Rizzo v. Goode*, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.    Deliberate Indifference to Serious Medical Needs

A convicted prisoner's deliberate indifference claims arise under the Eighth Amendment's proscription against cruel and unusual punishment. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187-88 (9th Cir. 2002). A pretrial detainee, however, who has not yet been convicted of a crime, derives such rights from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Id.* at 1187 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Regarding medical needs, the Due Process Clause "imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Id.* (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)); *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

Deliberate "[i]ndifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care.'" *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  To establish deliberate indifference, first, a "plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (quotations omitted).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.*  This can be shown by alleging "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  The "'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983." *Jett,* 439 F.3d at 1096 (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## B.     RN Defendants Jane, Janet, Susan, Betty, Alice, and Kathy Doe

Taken singly, Plaintiff's claims against the separately identified RN Defendants may not meet the deliberate indifference standard.  When viewed in their entirety and in the light most favorable to Plaintiff, however, these allegations sufficiently state a claim that unidentified OCCC nursing staff acted with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff alleges he repeatedly informed RN Defendants and "each nurse" that he was in great pain, believed his jaw was broken, required pain relief, and needed to see a physician. Compl., Doc. No. 1, PageID #12.  Nonetheless, he was not taken to an emergency room, given additional pain medication, scheduled for an immediate appointment with a physician, or even taken to the onsite OCCC dental department for an x-ray of his jaw for eight days after his injury.  He alleges two nurses laughed at his pain.  He alleges he notified the RN Defendants' supervisor of these problems, and personally spoke with Susan Doe about his inability to eat because he was not receiving a soft diet.  By the time Plaintiff was scheduled with and seen by Dr.

Karl Ayer and Dr. Francis Hamada, his jaw had begun healing improperly and could not be set, and he had allegedly lost fifteen pounds.  Plaintiff alleges that he repeatedly asked for medical attention and pain relief over a period of almost a year and was largely ignored by the RN Defendants.  These allegations state a claim and require an answer.

To the extent that Plaintiff alleges that RN Defendant Alice Doe denied his grievance, however, Plaintiff fails to state a claim.  Simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [underlying] violation."  *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); *Wright v. Shapirshteyn*, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983").

13

Plaintiff states a claim against unidentified RN Defendants.  After Plaintiff adequately identifies these individuals so that they can be served, they will be required to answer the Complaint.

## C.    Dr. Karl Ayer and Dr. Francis Hamada

Plaintiff's allegations against Dr. Karl Ayer and Dr. Francis Hamada also state a claim when viewed liberally and in conjunction with Plaintiff's other allegations.  Although neither can be held liable for failing to examine Plaintiff earlier if they were unaware of his need for medical attention, Plaintiff alleges that he was in severe pain and requested pain relief for his broken jaw and neither Dr. Karl Ayer nor Dr. Francis Hamada even came back to the waiting room to discuss this with him.  Nor did either apparently prescribe him pain medicine.  Plaintiff's claims against Dr. Karl Ayer and Dr. Francis Hamada shall proceed and will require an answer.

## D.    Food and Diet Supervisor John Doe

Plaintiff says he asked someone to notify Food and Diet Supervisor John Doe that he was not receiving an adequate soft foods diet.  This is insufficient to show that John Doe was aware of Plaintiff's need for a soft diet or that he was not getting such a diet and that he acted with deliberate indifference to Plaintiff's serious medical needs.  This claim is DISMISSED with leave to amend.

### E.    Dr. Barney Toyoma

Plaintiff saw Dr. Barney Toyoma in July 2014, four months after his injury occurred.  Dr. Barney Toyoma examined Plaintiff, prescribed him a muscle relaxant for his neck pain, and ordered an ultrasound.  The ultrasound revealed a lymph node that was one centimeter in size.  It appears that Dr. Barney Toyoma saw Plaintiff again in November 2014, although this is not explicit in the Complaint, and prescribed him Elavil.  Dr. Barney Toyoma examined Plaintiff again in January 2015, and despite his earlier statements that physical therapy was unavailable at OCCC, he prescribed Plaintiff physical therapy.  In March 2015, Dr. Barney Toyoma told Plaintiff that nothing further could be done for Plaintiff's continuing neck pain.  Plaintiff may disagree with Dr. Barney Toyoma's diagnoses and treatments, but this is insufficient to state a claim for deliberate indifference. Neither negligence in diagnosing or treating a medical condition nor a difference of opinion between a prisoner and medical providers concerning the appropriate course of treatment are sufficient to state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff's claims against Dr. Barney Toyoma fail to state a claim for deliberate indifference to his serious medical needs and they are DISMISSED with leave to amend.

## IV.  LEAVE TO AMEND

Plaintiff may file an amended complaint on or before May 13, 2016, that cures the deficiencies noted above.  An amended complaint generally supersedes the previous complaint.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc).  Thus, an amended complaint should stand on its own without incorporation or reference to a previous pleading.  Defendants not named and claims dismissed without prejudice that are not realleged in an amended complaint may later be deemed voluntarily dismissed.  *Id.* at 928 (stating claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are "voluntarily dismissed" are considered "waived if not repled").

In the alternative, Plaintiff may notify the court in writing on or before May 13, 2016, that he will stand on his claims against the unidentified RN Defendants and Defendants Dr. Karl Ayer and Dr. Francis Hamada.  In that event, the court will order the Complaint served and require those Defendants to answer Plaintiff's claims against them.

## V.  CONCLUSION

(1)  The Complaint is DISMISSED IN PART for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Specifically, Plaintiff states a

16

claim for deliberate indifference against the unidentified RN Defendants and

Defendants Dr. Karl Ayer and Dr. Francis Hamada.  These claims shall proceed

and be answered after service is perfected.

Plaintiff fails to state a claim against Defendants John Doe and Dr. Barney

Toyoma and claims against them are DISMISSED with leave to amend.

(2)  Plaintiff may file an amended complaint curing the deficiencies in his

dismissed claims on or before May 13, 2016.  Plaintiff SHALL use the court's

prisoner civil rights complaint form if he chooses to amend his pleadings.

(3)  In the alternative, Plaintiff may NOTIFY the court in writing on or

before May 13, 2016, that he elects to stand on his claims against the RN

Defendants and Defendants Dr. Karl Ayer and Dr. Francis Hamada and go

forward.  If Plaintiff chooses this option, the court will order the U.S. Marshal to

serve the Complaint at Plaintiff's direction as to those claims only.

///

///

///

///

///

///

17

(4)  The Clerk is directed to mail Plaintiff the court's prisoner civil rights complaint form so that he can comply with the directions in this Order if he chooses to amend his pleadings.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 13, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Baker v. Jane Doe, et al.*, 1:16 cv 00140 JMS/RLP; scrn 2016 Baker 16 140 jms (pretr. detainee dny med care)