IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VERNON JOHN BAKER,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>EVELYN GASPAR, RN; LOUIS NURSE SEMEATU, RN; LISA OGATA, RN; COURTNEY MORI, RN; DR. KARL AYER; DR. FRANCIS HAMADA,<br><br>　　　　　　Defendants. | CIVIL NO. 16-00140 JAO-RLP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.　INTRODUCTION

This action arises out of the medical treatment Plaintiff Vernon Baker ("Plaintiff") received while imprisoned at Oahu Community Correctional Center ("OCCC"). On March 20, 2014, another inmate struck Plaintiff and injured his jaw. In his Third Amended Complaint ("TAC"), Plaintiff alleges that he received untimely and inadequate medical treatment for his injury. Plaintiff asserts Hawai'i state law negligence claims and federal constitutional claims against Defendants Evelyn Gaspar, RN; Lisa Ogata, RN; Louis Semeatu, RN; Courtney Mori, RN; Dr. Karl Ayer; and Dr. Francis Hamada.[1] Nurse Semeatu, Nurse Mori, Dr. Ayer, and

---

[1] Nurse Gaspar and Nurse Ogata have not been served.

Dr. Hamada (collectively, "Defendants") move for summary judgment as to Plaintiff's 42 U.S.C. § 1983 claims (Counts I and II) against Nurse Semeatu, Nurse Mori, Dr. Ayer, and Dr. Hamada and as to Plaintiff's negligence claims against Nurse Semeatu, Nurse Mori, and Dr. Ayer (Count III).[2]

For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## II. BACKGROUND

### A. Factual History

On the evening of March 20, 2014, another inmate struck Plaintiff at OCCC. Doc. No. 57 at ¶ 1. Plaintiff was taken to OCCC's medical module where he complained of severe mouth and throat pain. *Id.* Nurse Gaspar took a photo of Plaintiff's face, gave him an ice pack, and instructed him to take the naproxen that he already owned. *Id.* Plaintiff returned to his module, but two and a half hours later he again complained of pain and asked to go to the hospital. *Id.* at ¶ 2. Plaintiff returned to the medical module where Nurse Semeatu evaluated him. *Id.* According to Plaintiff, he begged to be hospitalized but Nurse Semeatu laughed at him and told him there was nothing wrong with him. *Id.* Plaintiff returned to his module and at 1:30am, he asked the Adult Corrections Officer ("ACO") to call medical and request hospitalization again. *Id.* at ¶ 2. Nurse Semeatu denied the

---
[2] The Court will refer to Plaintiff's Hawai'i negligence claim as "Count III," even though Plaintiff does not label his third cause of action in the TAC.

2

request and told the ACO that Plaintiff could report to sick call the next day. *Id.* at ¶ 3.

From March 21, 2014 to March 28, 2018, Plaintiff reported to sick call multiple times and complained of shooting pain in his throat and jaw, trouble eating and sleeping, weight loss, severe headaches, a lump inside his jaw, and a "click[ing]" of his larynx. Pl.'s Concise Statement of Facts ("CSF"), Exhibit A ("Pl.'s Decl.") at ¶¶ 23–35. On March 28, 2014, Dr. Ayer evaluated Plaintiff's jaw. Pl.'s Decl. at ¶¶ 36–37. Plaintiff alleges that Dr. Ayer was short with him and did not listen to his description of symptoms. *Id.* at ¶ 38. Plaintiff requested an x-ray and Dr. Ayer referred him to the on-site dentist, Dr. Hamada. *Id.* at ¶¶ 39–40. The x-ray revealed a fractured jaw, so Dr. Hamada prescribed antibiotics, referred Plaintiff to a Queen's Medical Center ("QMC") dentist, and told him he would receive a "soft diet." *Id.* at ¶¶ 44, 46. Plaintiff alleges that Dr. Hamada also told him wiring of his jaw was not necessary because eight days had passed and the bones were already fusing out of place. *Id.* at ¶ 47. Defendants contend that Dr. Hamada did not say this, Defs.' CSF, Ex. 5 at ¶ 7, and that in fact Plaintiff's injury did not require jaw wiring, Defs.' CSF, Ex. 7 at 2–3. Plaintiff asked Dr. Hamada for pain medication because the naproxen was not working, and Dr. Hamada agreed to discuss it with Dr. Ayer. Pl.'s Decl. at ¶ 48. Plaintiff awaited Dr. Hamada's response in the waiting room but after being advised that his

appointment was over, he returned to his module. *Id.* at ¶¶ 49–52.

Over the next few weeks, Plaintiff continued to experience pain and did not receive a soft food diet. *Id.* at ¶¶ 53, 55–58. He filled out medical slips requesting a soft food diet and medication, and was told he would see a doctor soon but was not given a date. *Id.* at ¶ 58. On June 9, 2014, Plaintiff submitted a medical slip requesting a doctor's appointment and Nurse Mori denied the request, saying Plaintiff had refused an appointment with Dr. Ayer. *Id.* at ¶¶ 75–76. Plaintiff claims this is not true, admitting only that he had filed a grievance against Dr. Ayer and said he would rather wait for another doctor. *Id.* at ¶ 77. On September 12, 2014, Plaintiff saw a doctor and received an ultrasound, which revealed a neck abnormality. *Id.* at ¶ 79. Plaintiff was later prescribed pain medication and physical therapy. *Id.* at ¶¶ 85–86. He continues to experience neck and jaw pain but is not receiving physical therapy or pain medication, other than his own naproxen. *Id.* at ¶¶ 93–94.

## B. Procedural History

Plaintiff filed the TAC on March 26, 2016, Doc. No. 57, asserting the following claims against Nurse Gaspar, Nurse Semeatu, Nurse Ogata, Nurse Mori, Dr. Ayer, and Dr. Hamada: (1) violations of § 1983 (Counts I and II) and (2) negligence (Count III). Plaintiff prays for pain and suffering damages and injunctive relief to treat his ongoing injury. Doc. No. 57 at 8.

4

On September 6, 2018, Defendants filed the instant Motion for Summary Judgment. Doc. No. 154.

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can

it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, summary judgment may be entered. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence "sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

A defendant may assert affirmative defenses by a motion for summary judgment. Fed. R. Civ. P. 56. The motion for summary judgment will be granted when "it raises at least one legally sufficient defense to bar the plaintiff's claim and no triable issue of fact relates to that defense." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982); *see, e.g.*, *Dam v. Gen. Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958); *Benjamin v. W. Boat Bldg. Corp.*, 475 F.2d 1085, 1086 (9th Cir. 1973). "If the moving party's defense is legally inadequate or would require the adjudication of fact issues, the motion will be denied." *Seaboard*, 677 F.2d at 1308; *U.S. v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990).

## IV. DISCUSSION

Defendants move for summary judgment on Plaintiff's 42 U.S.C. § 1983

claims against Nurse Semeatu, Nurse Mori, Dr. Ayer, and Dr. Hamada as well as Plaintiff's negligence claims against Nurse Semeatu, Nurse Mori, and Dr. Ayer. Defendants move for summary judgment on the following grounds: (1) claims against Nurse Semeatu are barred by the statute of limitations; (2) Defendants were not deliberately indifferent to Plaintiff's medical needs, as required for a § 1983 claim; (3) Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims; (4) Plaintiff does not have the requisite expert testimony to establish negligence claims against Nurse Semeatu, Nurse Mori, or Dr. Ayer; and (5) Nurse Semeatu and Nurse Mori are entitled to qualified privilege from Plaintiff's negligence claims.

**A.     Statute of Limitations**

Defendants argue that Plaintiff's § 1983 and negligence claims against Nurse Semeatu are barred by the two-year statute of limitations because Nurse Semeatu treated Plaintiff on March 21, 2014, and the clerk of court recorded Plaintiff's original complaint as filed on March 24, 2016. Mot. at 9. Plaintiff argues that the complaint was considered filed on March 14, 2016, the day he submitted it to prisoner authorities for mailing. Opp. at 7. Plaintiff is correct.

Under the "mailbox rule," a pro se prisoner's pleading is considered filed on the date the prisoner delivered the pleading to prison authorities for mailing. *Roberts v. Marshall*, 627 F.3d 768, 770 n.1 (9th Cir. 2010); *Houston v. Lack*, 487

U.S. 266, 270 (1988). The mailbox rule applies in this way because prisoners do not have control over their pleading's filing date beyond their ability to deliver it to prison authorities. *Houston*, 487 U.S. at 266–67. The Ninth Circuit has held that the mailbox rules applies to § 1983 cases filed by pro se prisoners. *Douglas v. Noelle*, 567 F.3d 1103, 1104 (9th Cir. 2009).

Plaintiff timely filed the complaint under the mailbox rule. He did not have an attorney when he filed his initial complaint, Doc. No. 1-1, and he delivered his envelope to OCCC authorities for processing and mailing on March 14, 2016, Doc. No. 1-2. Viewing the evidence in the light most favorable to Plaintiff, Nurse Semeatu saw Plaintiff on the early morning of March 21, 2014. Doc. No. 57 at ¶¶ 2–3. Therefore Plaintiff submitted his complaint seven days before the statute of limitations expired. *See Houston*, 487 U.S. at 270. Defendants' Motion is therefore DENIED as to Nurse Semeatu's statute of limitations defense.

**B.     Section 1983 Claims (Counts I and II)**

Plaintiff brought a § 1983 claim to remedy Defendants' alleged violations of his Constitutional rights. Doc. No. 57 at ¶ 5–6. Plaintiff claims that Defendants' inadequate and delayed medical treatment violated his Eighth and Fourteenth Amendments. Section 1983 states:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

8

secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. The provision does not create substantive rights; "rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) (citation and quotations omitted).

As a pretrial detainee, Plaintiff's protection against cruel and unusual punishment arises under the Due Process Clause of the Fourteenth Amendment, but is properly analyzed under the Eighth Amendment's deliberate indifference standard.[3] *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). The Constitution's proscription of cruel and unusual punishment is violated by "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104. Stated differently, an inmate may prevail on a Fourteenth Amendment claim for medical mistreatment if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. at 106. The Ninth Circuit analyzes this standard by first determining whether the inmate's medical need was serious, and then whether the defendants were deliberately indifferent to the inmate's serious medical need. *Jett*

---

[3] Therefore, the basis for Plaintiff's § 1983 claim is the Fourteenth Amendment, as both parties have established in their pleadings. Defendants argue that to the extent Plaintiff brings an Eighth Amendment claim, it should be dismissed. Mot. at 14. The Court agrees.

*v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

### 1. Seriousness of Medical Need

The first inquiry is whether Plaintiff's medical need was serious. A "serious" medical need exists when the failure to treat it could result in further significant injury or "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 103. Defendants do not argue that Plaintiff's medical need was not serious. Indeed, Plaintiff's fractured jaw was clearly a serious medical need. *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (holding that a broken jaw was a serious medical need when it affected plaintiff's daily activities and ability to eat); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 199 (9th Cir. 1989) (finding delay in dental care was a serious medical need when it caused plaintiff severe pain and permanent tooth damage). Having established that Plaintiff's jaw injury was a serious medical need, the Court must next determine whether Defendants responded to Plaintiff's medical need with deliberate indifference.

### 2. Defendants' Response to Medical Need

To establish deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc); *see also Ortiz v. City of Imperial*, 884 F.2d 1312, 1313 (9th Cir.1989). Negligence in diagnosing or

treating a medical condition, without more, does not violate a prisoner's constitutional rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). In addition, a difference of opinion as to the best course of medical treatment does not constitute deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 241–42 (9th Cir.1989).

A delay in dental care can demonstrate deliberate indifference sufficient to preclude summary judgment if there is evidence a defendant knew about the plaintiff's serious condition but denied his requests for treatment. *See Hunt*, 865 F.2d at 200–01 (affirming denial of summary judgment where plaintiff's grievance forms showed defendants could have known about plaintiff's breaking teeth, bleeding gums, pain, and weight loss but failed to provide treatment, replace his dentures, or approve him for a soft food diet); *cf. Sanchez*, 891 F.2d at 241–42 (affirming summary judgment and finding that deliberate indifference allegations were unsupported where prison doctors prescribed antibiotics, hot packs, and anti-inflammatories instead of following another doctor's recommendation for surgery); *Miles v. Daniels*, 231 F. App'x 591, 592 (9th Cir. 2007) (affirming summary judgment where plaintiff did not receive dentures for 19 months but defendant responded promptly to prisoner's complaints and provided reasons why prisoner could not be treated more promptly).

### i. Nurse Semeatu

Nurse Semeatu saw Plaintiff during his second visit to the medical module on the night of his injury. Pl.'s Decl. at ¶ 13. Plaintiff told Nurse Semeatu he was in severe pain and wanted to go to the hospital, that he had lost his voice, and that his throat clicked. *Id*. at ¶ 14. Nurse Semeatu did not ignore him; she evaluated him and concluded he was fine. *Id.* at ¶ 3. She also told the ACO that Plaintiff could go to sick call the next day. *Id.* Plaintiff alleges that although he begged Nurse Semeatu to let him go to the hospital, she said there was nothing wrong. *Id*. at ¶ 16. Nurse Semeatu allegedly laughed at Plaintiff and sent him back to the medical module without treatment. *Id*. at ¶ 17. She later denied Plaintiff's request to return to the medical module that night. *Id.* ¶ 21. There is evidence that Plaintiff was bleeding at the time and in pain because his jaw was fractured. Pl.'s Decl. at ¶ 8, 44. Viewing the evidence in the light most favorable to Plaintiff, Nurse Semeatu's actions at most constituted negligence to diagnose his fractured jaw, or a difference of opinion regarding proper treatment for the injury. There is no evidence that Nurse Semeatu "purposefully ignore[d] or fail[ed]" to respond to Plaintiff's medical need. The allegation that Nurse Semeatu laughed at Plaintiff is not enough to create a genuine issue of material fact as to her deliberate indifference. Summary judgment is GRANTED in Nurse Semeatu's favor as to Counts I and II.

### ii.  Nurse Mori

On June 9, 2014, Plaintiff submitted a medical slip requesting a doctor's appointment and Nurse Mori denied the request, saying Plaintiff had refused an appointment with Dr. Ayer. *Id.* at ¶¶ 75–76.  Nurse Mori's actions cannot establish a genuine issue of material fact as to his deliberate indifference, especially when he provided a reason for the delay in treatment.  Accordingly, Defendants' Motion is GRANTED as to Plaintiff's § 1983 claim against Nurse Mori.

### iii.  Dr. Ayer

It is undisputed that on March 28, 2014, Dr. Ayer reviewed Plaintiff's medical records, took an oral history, and conducted an evaluation of Plaintiff. Defs.' CSF at ¶ 11; Pl.'s CSF at ¶ 11.  It is also undisputed that Dr. Ayer doubted Plaintiff had a fracture, but referred Plaintiff to the OCCC dental clinic for further evaluation.  Defs.' CSF at ¶ 14; Pl.'s CSF at ¶ 14.  Viewing these undisputed facts in the light most favorable to Plaintiff, Dr. Ayer evaluated Plaintiff, made an assessment, and made a referral.  Dr. Ayer was at most negligent in following up with Plaintiff or had a different opinion regarding the urgency of Plaintiff's condition.  There is no evidence that Dr. Ayer was deliberately indifferent to Plaintiff's medical need.  Defendants' Motion is therefore GRANTED as to Plaintiff's § 1983 claim against Dr. Ayer.

### iv. Dr. Hamada

It is undisputed that on March 28, 2014, Dr. Hamada reviewed Plaintiff's medical history, examined him, and ordered x-rays. Defs.' CSF at ¶ 15; Pl.'s CSF at ¶ 15. Dr. Hamada referred Plaintiff to QMC, prescribed antibiotics, and told him he would be placed on a soft food diet. Pl.'s Decl. at ¶ 43, 46, 47. Plaintiff alleges that Dr. Hamada was deliberately indifferent when he left Plaintiff in the waiting room without answering his questions, denied Plaintiff pain medicine, and did not follow up regarding the off-site dentist and Plaintiff's soft food diet. According to Plaintiff's expert, Plaintiff might have had a different result if he had seen the off-site dentist sooner. Pl.'s CSF, Ex. H at 68. Viewing these facts in the light most favorable to Plaintiff, Dr. Hamada was at most negligent in his choice of treatment for Plaintiff. *See, e.g.*, *Toussaint v. McCarthy*, 801 F.2d 1080, 1112 (9th Cir. 1986) *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) ("Neither precedent nor common sense suggests that delay in providing a special diet arises to the level of deliberate indifference."). Summary judgment is GRANTED as to Plaintiff's § 1983 claim against Dr. Hamada.

### 3. Qualified Immunity

Defendants argue that all Defendants are entitled to qualified immunity. Plaintiff's § 1983 claims against Nurse Semeatu, Nurse Mori, Dr. Ayer, and Dr. Hamada cannot survive summary judgment because Plaintiff has not created a

genuine issue of material fact as to Defendants' deliberate indifference. The Court need not address Defendants' entitlement to qualified immunity.

**B.    Negligence Claim (Count III)**

Defendants argue that Plaintiff has not presented the requisite expert testimony to establish a negligence claim against Nurse Semeatu, Nurse Mori, or Dr. Ayer. Defendants are incorrect: Plaintiff's expert testified as to the standard of care and causation in this case. Even though Plaintiff offered the requisite expert testimony, however, summary judgment is GRANTED as to Plaintiff's negligence claims against Nurse Semeatu and Nurse Mori because they are entitled to qualified privilege.

**1.    Expert Testimony**

Defendants argue that Plaintiff's expert testimony does not establish that Nurse Semeatu, Nurse Mori, or Dr. Ayer breached any standard of care or contributed to Plaintiff's injury.[4] In medical negligence and medical malpractice cases, the plaintiff is generally required to provide expert testimony to establish an element of their negligence case. *See, e.g.*, *Craft v. Peebles*, 78 Hawaiʻi 287, 298, 893 P.2d 138, 149 (1995) (finding that informational package inserts, without expert testimony, were insufficient to establish the standard of care at the summary judgment stage); *Phillips v. Queen's Med. Ctr.*, 1 Haw. App. 17, 18, 613 P.2d 365,

---

[4] Defendants have not raised this argument with regard to Dr. Hamada. Mot. at 9.

15

366 (1980) (granting summary judgment in negligence case when there was no expert medical testimony establishing causation); *Devine v. Queen's Med. Ctr.*, 59 Haw. 50, 52, 574 P.2d 1352, 1353 (1978) (holding that plaintiff's medical malpractice claim could not survive summary judgment in the absence of expert medical testimony when the record otherwise failed to establish causation). The Hawai'i Supreme Court has explained this requirement:

> In the ordinary negligence case the jury can determine whether there has been a breach of defendant's duty to the plaintiff on the basis of their everyday experience, observations and judgment. The ordinary negligence case will not require expert opinion evidence to delineate acceptable from unacceptable standards of care. However, in the medical negligence case, lay jurors are ill prepared to evaluate complicated technical data for the purpose of determining whether professional conduct conformed to a reasonable standard of care and whether there is a causal relationship between the violation of a duty and an injury to the patient. Therefore, expert opinion evidence is generally required to aid the jury in its tasks.

*Bernard v. Char*, 79 Hawai'i 371, 377, 903 P.2d 676, 682 (App. 1995) (internal citations and emphasis omitted); *see also Medina v. Figuered*, 3 Haw. App. 186, 188, 647 P.2d 292, 294 (1982) (articulating the common knowledge and *res ipsa loquitor* exceptions to expert testimony requirement).

Unlike the plaintiffs in *Craft*, *Phillips*, and *Devine*, Plaintiff has presented the requisite level of expert testimony to survive summary judgment. Plaintiff's expert, Dr. Kotikian, sufficiently testified as to the standard of care: He stated that mandible fractures should typically be treated within two weeks of injury due to

the risk of formation of a bony callus. Pl.'s CSF, Ex. J at 2. Dr. Kotikian also testified as to causation: He said that the entire process, "from Nurses up," was delayed and said the fracture could have been reduced if Defendants had provided timely medical care.[5] Pl.'s CSF, Ex. H at 48. Therefore there are genuine issues of material fact as to the standard of care and causation. Defendants' Motion is DENIED as to Plaintiff's negligence claim against Dr. Ayer.

2. **Qualified Privilege**

Defendants argue that even if Plaintiff has established a negligence claim, Nurse Semeatu and Nurse Mori are entitled to qualified privilege.[6] "Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty." *Castro v. Melchor*, 760 F. Supp. 2d 970, 997 (D. Haw. 2010) (*citing Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982)). The privilege is not absolute—Plaintiff may maintain his negligence claim against Nurse Semeatu and Nurse Mori if he can "demonstrate by clear and convincing proof that [they were] stirred by malice and not by an otherwise proper

---

[5] Defendants characterize Dr. Kotikian's testimony differently, saying that "Plaintiff's expert agreed that Plaintiff's condition did not rise to the level of . . . becoming an emergency." DSTF at ¶ 30. The record is unclear as to what time frame and to which medical staff member Dr. Kotikian was referring. In any event, Dr. Kotikian's statement demonstrates that Plaintiff has presented expert testimony regarding causation and the standard of care.

[6] Defendants Ayer and Hamada also asserted the defense of qualified privilege in their Answers, but did not seek summary judgment on that grounds.

purpose." *Towse*, 64 Haw. at 631–33, 647 P.2d at 702–03.

"Malice" is "the intent, without justification or excuse, to commit a wrongful act[;] reckless disregard of the law or of a person's legal rights[;] and ill will[,] wickedness of heart." *Awakuni v. Awana*, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007) (internal citation omitted). "Unless the issue is removed from the case by uncontested affidavits and depositions the existence or absence of malice is a question for the jury." *Costales v. Rosete*, 133 Hawai'i 453, 467, 331 P.3d 431, 445 (2014); *see Kamakeeaina v. City & Cty. of Honolulu*, No. CIV. 11-00770 JMS, 2014 WL 1691611, at *11 (D. Haw. Apr. 29, 2014), aff'd sub nom. *Kamakeeaina v. Maalo*, 680 F. App'x 631 (9th Cir. 2017) (finding summary judgment appropriate under Hawai'i law when prisoner plaintiff did not refute defendants' affidavits stating they were not motivated by malice); *Castro*, 760 F. Supp. 2d at 998 (interpreting Hawai'i law and finding sufficient factual dispute regarding malice when defendants repeatedly disregarded prisoner plaintiff's complaints of vaginal bleeding); *Keanaaina v. Dir.*, Dep't of Pub. Safety, No. CV 09-00030 SPK-LEK, 2010 WL 11613656, at *3 (D. Haw. May 18, 2010) (finding no evidence of malice under Hawai'i law when prisoner plaintiff alleged mere delay in the treatment of his back injury).

Thus, Plaintiff's negligence claims against Nurse Semeatu and Nurse Mori can survive summary judgment if there is a genuine issue of material fact as to

whether Nurse Semeatu and Nurse Mori acted with malice.

### i. Nurse Semeatu

It is undisputed that Nurse Semeatu evaluated Plaintiff on the night he was injured. Defs.' CSF at ¶ 5; Pl.'s CSF at ¶ 5. Plaintiff asserts that Nurse Semeatu laughed at Plaintiff and failed to accurately observe and record Plaintiff's symptoms. *Id*. Plaintiff also claims that Nurse Semeatu refused to see him a second time that evening. *Id*. When Nurse Semeatu denied the request, however, she told the ACO that Plaintiff could report to sick call the next day. *Id.* at ¶ 3. Therefore, the record shows that Nurse Semeatu evaluated Plaintiff and referred him to sick call, unlike the Defendants in *Castro* who refused to evaluate the plaintiff. Although Plaintiff disagreed with Nurse Semeatu's assessment, this is not enough to meet the malice standard articulated in *Awakuni*. There is no genuine issue of material fact regarding Nurse Semeatu's malice. Thus, summary judgment is GRANTED as to Plaintiff's negligence claim against Nurse Semeatu.

### ii. Nurse Mori

Plaintiff's sole allegation against Nurse Mori is that he failed to schedule a doctor's appointment for Plaintiff. Pl.'s Decl. at ¶ 68. Allegations of delay are not enough to create a material issue of fact as to malice. *Keanaaina*, 2010 WL 11613656, at *3. Plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir.2003) (internal citation omitted). Finding no genuine issue of material fact as to Nurse Mori's malice, the Court GRANTS summary judgment as to Plaintiff's negligence claim against Nurse Mori.

## V. CONCLUSION

In accordance with the foregoing, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion. Summary judgment is GRANTED in favor of Nurse Semeatu and Nurse Mori as to Counts I, II, and III. Summary judgment is GRANTED in favor of Drs. Ayer and Hamada as to Counts I and II and DENIED as to Count III against Dr. Ayer.

The claims remaining for disposition are as follows: Counts I and II against Nurse Gaspar and Nurse Ogata and Count III against Nurse Gaspar, Nurse Ogata, and Drs. Ayer and Hamada.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, February 28, 2019.



　/s/　Jill A. Otake　　　　　
Jill A. Otake
United States District Judge

Civil No. 16-00140 JAO-RLP; *Baker v. Gaspar*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT